UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA JARAMILLO,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. CV 06-7467 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

　　　Rosa Jaramillo filed this action on November 29, 2006. On March 13, 2007, the case was transferred to Magistrate Judge Alicia G. Rosenberg. Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on March 15 and 22, 2007. On August 21, 2007, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

　　　Having reviewed the entire file, the Court remands for further proceedings consistent with this Opinion.

///

///

///

**I.**

## PROCEDURAL BACKGROUND

On December 16, 2004, Jaramillo filed an application for supplemental security income benefits. A.R. 10. The Commissioner initially denied the application. *Id.* Jaramillo requested a hearing. *Id.* On May 22, 2006, the Administrative Law Judge ("ALJ") conducted a hearing at which Jaramillo and a vocational expert testified. A.R. 311-44. On June 19, 2006, the ALJ issued a decision denying benefits. A.R. 10-16. On September 22, 2006, the Appeals Council denied the request for review. A.R. 3-5. This lawsuit followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if not supported by substantial evidence or based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

**III.**

## DISCUSSION

**A.  Definition of Disability**

"A person qualifies as disabled, and thereby eligible for such benefits, 'only

2

if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

### B. The ALJ's Findings

The ALJ made the following findings. The onset of Jaramillo's disability was January 1, 2002. A.R. 10, 15. She suffered from the following severe impairments: depression, degenerative joint disease, and morbid obesity. A.R. 15. None of the impairments met or equaled a listed impairment. *Id.*

Jaramillo had the residual functional capacity for sedentary work. *Id.* She could lift 10 pounds frequently and carry 10 pounds occasionally. A.R. 15-16. In an 8-hour day, Jaramillo could stand and walk for "less than 6 hours out of an 8 hour day." A.R. 16. She could occasionally perform most postural activities. *Id.* She was "moderately limited in [her ability] to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods." *Id.*

Jaramillo was unable to perform her past relevant work. *Id.* However, she could perform the full range of sedentary work, including jobs as a charge account clerk and lampshade assembler, both of which are unskilled. *Id.*

### C. Whether Jaramillo's Impairment Equaled A Listing

At Step Three, the claimant bears the burden of demonstrating that her impairments are equivalent to a listed impairment that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth

step." *Id.* at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(4)(iii), 416.920(4)(iii).

"To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett*, 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1526. "'Medical equivalence must be based on medical findings.' A generalized assertion of functional problems is not enough to establish disability at step three." *Tackett*, 180 F.3d at 1100 (citation omitted).

At the request of the California Department of Social Services, on May 9, 2005, Jaramillo saw Dr. Samir Tejwani. One of the doctor's findings was that Jaramillo should "not walk on uneven terrain." A.R. 126. Jaramillo argues that the inability to walk on uneven terrain means that she equaled Listing 1.02A (JS 16-17):

> 1.02 Major dysfunction of a joint(s) (due to any cause):
> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.[1]

---

[1] "(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.

4

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02A.

Jaramillo concedes that she does not meet the Listing 1.02A. She lacks a finding as to impairment in a weight bearing joint as described in the listing. JS 18. She also concedes there are no clinical findings of "joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." JS 17.

However, Jaramillo argues that Dr. Tejwani's finding that she cannot walk on uneven terrain is sufficient to equal Listing 1.02A. In support of her argument, she cites Social Security Ruling ("SSR") 02-1p,[2] which states that "if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence." SSR 02-1p(7) (available at 2000 WL 628049).

The ALJ reported Dr. Tejwani's finding that Jaramillo "should not walk on

---

Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation."

[2] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (footnotes omitted).

uneven terrain." A.R. 11-12.  Although the ALJ did not include this limitation in his findings about her residual functional capacity (A.R. 15-16), he did include this limitation when posing the hypothetical to the VE (A.R. 333).

The ALJ's decision found that Jaramillo did not meet or equal a listing, but did not state reasons.[3]  A.R. 12, 15.  A district court is constrained to review the reasons that the ALJ asserts for his or her decision.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  A district court may not affirm the decision based on reasons or grounds that the Commissioner did not invoke in making its decision.  *Stout v. Commissioner*, 454 F.3d 1050, 1054 (9th Cir. 2006). Accordingly, the matter must be remanded on this issue.

### D. Moderate Mental Limitation

The ALJ's residual functional capacity assessment found that Jaramillo "is moderately limited" in her ability to understand and remember detailed instructions, carry out detailed instructions and maintain attention and concentration for extended periods.  A.R. 16, 147, 161, 333-334.

Jaramillo argues that, in questioning the vocational expert, the ALJ should have used a definition of "moderate" derived from regulations governing findings at Step Two of the sequential analysis.  20 C.F.R. § 416.920a(c)(4), (d)(1)-(3). Jaramillo's argument is inconsistent with Ninth Circuit authority.  *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).  In *Hoopai*, the Ninth Circuit rejected a similar argument in the context of Step Five.  "[W]e hold that satisfaction of the step-two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional

---

[3] At the hearing, the ALJ responded to Jaramillo's equivalency argument by saying, "I haven't deliberated on the case."  A.R. 326.  Although the Commissioner argues that, at the hearing, the ALJ later stated his assumption that Jaramillo would recover from back surgery (A.R. 326-327), the ALJ's decision does not contain that rationale for rejecting the equivalency argument. Moreover, Dr. Tejwani does not appear to have diagnosed a back problem as the basis for his limitations.  A.R. 121-126.

6

limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert." *Id.* The claimant in *Hoopai* was diagnosed with moderate mental limitations more extensive than Jaramillo. The Ninth Circuit noted that "[w]e have not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation." *Id.* at 1077.

The rationale of *Hoopai* applies equally to this case. At Step Two, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); *Yuckert*, 482 U.S. at 146 n.5. "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted). Step two is "a de minimis screening device [used] to dispose of groundless claims." *Id.* at 687 (citation omitted). Step Two merely raises a prima facie case of a disability. *Hoopai*, 499 F.3d at 1076. By contrast, the Step Five determination goes beyond a threshold inquiry and is intended to ascertain whether there is a significant number of jobs that the claimant can perform. *Id.*

Accordingly, the ALJ was not required to accept the vocational expert's testimony in response to questions by Jaramillo's counsel that contained limitations not found by the ALJ. A.R. 337. The ALJ may rely on testimony a vocational expert gives in response to a hypothetical that contains "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005). The ALJ is not required to include limitations that are not in his findings. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

### E. **Jaramillo's Credibility**

"[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citations and internal quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and internal quotation marks omitted). If the ALJ has not found that the claimant is a malingerer, his "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* (citation and internal quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

Here, the ALJ did not find that Jaramillo was a malingerer. The ALJ found that "the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision." A.R. 15.

The ALJ found that Jaramillo's "back pain is and was genuine, but she is recovering nicely from her surgery and her back pain should resolve soon."[4] A.R. 13. The ALJ's finding that her back pain should resolve soon is ambiguous and is not supported by substantial evidence. Three days after surgery in December 2005, Jaramillo's had "improved pain of her lower back around the surgical site." A.R. 168. Twelve days after surgery, Jaramillo made "nice gains," but required standby assistance for bed mobility, sit to stand, and transfers. A.R. 167.

---

[4] Jaramillo argues that, even assuming the ALJ was correct, the ALJ should have found a closed period of disability from January 1, 2002 through at least December 17, 2005, when Jaramillo was released from the hospital after back surgery. JS 4-5. Jaramillo acknowledges that benefits are not payable before her application date of December 2004. JS 15; 20 C.F.R. § 416.335. The Commissioner argues that Jaramillo's back pain did not become disabling until November 2005, one month before her surgery, and thus did not last for 12 months. JS 12; A.R. 314. Jaramillo concedes she suffered a later onset date of back pain, but argues that this does not mean she is not credible. JS 13.

8

Twenty-four days after surgery, Jaramillo reported that she feels "100% better." A.R. 273. She had "localized pain but much improved." *Id.* However, as of February 1, 2006, two weeks before the hearing, Jaramillo's mental health records state she is "having great difficulty walking" and "has not been able to make it in for her appointments." A.R. 229. At the hearing, Jaramillo testified that she no longer had muscle spasms and had less pain in her back. A.R. 322, 329. However, she still could not walk too far or sit too long. A.R. 322. During the day, she alternated sitting, walking, and lying down. A.R. 322, 329-330. She testified that she uses a walker but not inside her home except for exercise. A.R. 322-323, 331. She testified she could not lift more than a gallon of milk.[5] A.R. 331.

The ALJ's second reason in support of his credibility finding was that Jaramillo's "psychiatric problem probably feeds on her Axis II stressors of pain and obesity." A.R. 13. Jaramillo testified that her depression has been relieved to the extent her surgery has been successful. A.R. 329. However, this begs the question as to the extent of Jaramillo's recovery after surgery, which is addressed above.[6]

The ALJ's third reason in support of his credibility finding was that Jaramillo "is caring for teenage children" and continued "to perform activities of daily living 'normally' despite her allegations that she requires assistance for normal daily hygiene activities." A.R. 13. The ALJ's finding misstates the record. Jaramillo testified that her teenage children practically take care of her now. A.R. 332; *see*

---

[5] A gallon of milk weighs about eight pounds. *D'Angelo v. Astrue*, 2007 WL 4617186, *5-6 (D. Ariz. 2007).

[6] Jaramillo argues that even assuming the ALJ is correct, he failed "to consider the mental impairments in combination with the pain symptoms to determine overall effect on the issue of disability." Jaramillo's citation to *Lester v. Chater*, 81 F.3d 821, 828-29 (9th Cir. 1995) in support of her argument is misleading. In *Lester*, the court held that "the Commissioner is required to take into account the combined effect of a claimant's physical and mental impairments in determining whether his condition equals this listing." *Id.* at 828.

1  A.R. 66 (as of June 22, 2005, Jaramillo reported that her "husband and children
2  do everything for me"); A.R. 84 (as of January 31, 2005, Jaramillo reported that
3  her boyfriend and kids do the house cleaning).  Nor is the ALJ's finding that
4  Jaramillo "continues to perform activities of daily living normally" supported.  The
5  only chore Jaramillo reported doing herself was cooking, and she did so sitting
6  down.  A.R. 85, 331.  Jaramillo sometimes was able to dress and bathe herself.
7  A.R. 131.
8     As noted above, this Court is remanding this matter as to Step Three.  If
9  necessary, on remand, the ALJ should reassess Jaramillo's credibility according
10 to applicable legal standards.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is remanded for further proceedings consistent with this Opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED:  March 11, 2008

*Alicia G. Rosenberg*
ALICIA G. ROSENBERG
United States Magistrate Judge